2018-11-15. Ms. Sterling. Good morning. Good morning, Your Honors. May it please the Court. The trial court abused its discretion by excluding aggregate evidence of partial payment of overtime to appellees when the appellees were already aware of this payment because they were the ones who asked permission to use their credit hours and then went ahead and used them. The formula for calculating damages in this case was relatively straightforward. The Court... At least I think I understand all of that. So can I ask you, I didn't see in the record but maybe there was, when back in starting in 2008 were there discovery requests or a court-imposed discovery order or rule or obligation that made clear to you that when you were asked to or ordered to supply all of the individual plaintiff's information about what credit hours they earned and what they used that that was an obligation that directed you to supply all of the information? To the best of my recollection there was a request, a discovery request, from plaintiffs for the government which had the availability to access the records of credit hour accrual and usage in a convenient digital form where they could aggregate it and provide it for all plaintiffs. So my recollection was plaintiffs asked if the government could provide it in that form and the government did. Was there some characterization in the request that in terms or substance said all relevant records? My recollection again was that the plaintiffs asked for, they were aware that there were different payroll systems that applied to different times because at one point the FAA, the agency had used one kind of payroll system and then they switched to a different one and my recollection is that the plaintiffs asked for all of those records. Yes, for the payroll records as well as records of credit hours earned and used by each plaintiff. I guess what I'm what I'm getting at is it sure seems from the course of proceedings that when you supplied information up to September 30th 2009 and not further that you bound yourself to the position that nothing thereafter was relevant. I would respectfully disagree with that. The earning and the usage and particularly the usage after October 2009, it happened on a pay period by pay period basis. So every two weeks plaintiffs were continuing to use credit hours. So although that meant that it was sort of an evolving picture and there was no agreement between the parties as to how frequently that usage would be updated. Do I understand? I think I'm remembering right. So discovery closed at the end of December 2011. Yes, it closed at the end of December 2011. Presumably I think you don't dispute that you had an obligation to supply, I don't know when you first gave information, I think there was there was a motion to stay in 2008 and there was a status report in 2009 which stayed everything except your discovery on this, this very thing. And then you get to 2011 and you have up to that point supplied information that stops on September 30th 2009. So why? Yes, Your Honor. And then there's an expert report and in fact the only expert which is the other side's expert that you can see just from the face of the report is offsetting only stuff from before October 1st 2009. Absolutely. And you don't raise any objection to it. Why is that a waiver of the position that anything after September 30th 2009 is relevant? I would say it is not a waiver. It was clearly a mistake and it was my mistake. I did not note that when we were looking at the expert report through 2012 that we had not supplemented from 2009 to 2012. And even when you first submitted the materials you did not reserve the right to when the materials might become available. We did not reserve the right, but I don't believe we had an obligation to reserve that right. I don't think we had an obligation to supplement periodically. When that periodically should be, I don't know. Clearly, yes, by 2012 it was a mistake not to note and to supplement from 2009 to 2012. I certainly don't think that results in any kind of a waiver with respect to credit hour usage after 2012 because clearly that information didn't exist. So there's nothing that we did or led, I believe, the plaintiffs to believe that credit hour usage after that time didn't count. In fact, we had people testify. But the lower court, and this is an abuse of discretion standard, the lower court seemed to believe that you at least led the court to believe that this was a self-contained calculation with all the information that was needed by all sides to do that calculation. And whether or not you think ultimately you could have made a different calculation argument had you produced this information sooner, that's not really the question. The question is whether the court abused its discretion in saying we've got to put an end to this litigation, the government didn't produce this, the government never made this argument that there were going to be additional offsets, and so we're done. But the court's analysis of whether to exclude the argument turned to some extent, and the court acknowledged this, that it required or turned to some extent on whether there was any harm to the appellees from considering this evidence. So it looked at that five-part test, how important the evidence was and whether there was any harm, and that is one of the errors that the court made, because the court found that the appellees were harmed, but that finding was based on the idea that the appellees would have needed to have discovery to respond to this information, and yet the court not only did not explain what discovery the appellees would need, it actually didn't really find that they needed discovery, kind of speculated, the court said they'd need more discovery, they'd have to reopen their whole expert report, they'd have to do more examination of how correct these records were. I mean, in other words, it's a whole nother litigation. Not really, Your Honor, and that's what I was going to say, that the court's holding on appendix 10, on page 10 of its opinion, was not that discovery was necessary, but that if, ultimately, a relatively small proportion of discovery was necessary, then it would be likely to prejudice the plaintiffs. So the court's decision doesn't even actually find that there would be discovery necessary, and the appellees failed to demonstrate what discovery would be necessary and what issue of the case that discovery would be relevant to. These didn't... I guess I'm looking at appendix page 1995, which I think is one of the pages whose numbers have not changed, and Dr. Lanier says, there's something strange about the government's numbers. Credit hours of 186,000, balance of 100,000, those can't all have been pre-October 1st, 2009. So wouldn't, at the minimum, there have... wouldn't there have had to have been discovery and litigation about, rather, a lot about what was going on starting October 1st, 2009, and including whether new credit hours were being earned? And maybe those were the ones that were being used and not ones from the earlier era? Not really, Your Honor, because the evidence, the records that were provided to the appellees made clear who in the group were exempt and who were non-exempt, and plaintiffs who... some plaintiffs who had started off at the beginning of the case as non-exempt became exempt and, therefore, eligible to earn credit hours, and that was all evident from the records that we provided to appellees. So the fact that... I mean, the Court's decision, this Court's decision, allowed the FAA to grant credit hours, so it's not usual that some appellees, particularly ones that were no longer non-exempt, as evident from the records, can continue to earn credit hours even after 2009. But it's a pretty complicated analysis. I mean, what the Court said is that having to reopen discovery and having... we're not talking about five people. We're talking about numerous, numerous appellees, and all of whom would have to have their records reanalyzed. And the government had control of that information and never turned it over, and it once turned over, the plaintiffs would have the obligation, certainly their lawyers would have had the obligation, to flice back all of that data and to have their expert reanalyze all that data. The analysis of this data was always a pretty push-button issue. It was just entering the data into a program that the expert already had. I have to point out that not a single appellee in this case came forward, and the Council didn't procure a single appellee to come forward and to challenge any of this data to say, I wasn't earning, or I was earning, or I was earning, and I shouldn't have been earning. Not a single one to come forward and proffer a claim or an allegation or an affidavit that might justify actually needing discovery in terms of reopening things. So, appellees just didn't... Well, they never got to that point because the whole point to the lower court was, we shouldn't have to do this at this stage. Yes, Your Honor, except that that holding, we would submit, is simply not supported by any actual finding in the record of prejudice, because there's really no demonstration as to what discovery would be needed and how that discovery would relate to any issue in this case. I think I might be into my rebuttal time. I'm so not used to being an appellant that I'm not really sure, but I'm going to save some of my time. We've noted. You are into your rebuttal time, and we'll save it for you. Thank you, Your Honor. Mr. Medeiros. Well, in this case, I'm not used to being an appellee, so may it please the court, we're coming up on the 12th anniversary of this case, and the case involves unpaid overtime to air traffic controllers that they worked 9, 10, 11, 12, and 13 years ago. Your Honor, you hit the nail on the head that in December 2015, four years after the close of discovery, the government attempted, and after a trial and an appeal, the government attempts to inject a new issue into the case, and the new issue would be the accrual and use of credit hours after October 1, 2009. That had never been an issue in the case. We had explored the issue in discovery, and the parties had determined that there had been a new collective bargaining agreement entered in October 1, 2009, which completely eliminated the credit hour program in practice. I can go over the voluminous evidence that was in the record regarding that. My recollection, I think I looked at all of your sites, they were all about no more earning of credits, not a one was about no more using credits. Your Honor, that's not correct. In the post, the parties' post-trial brief submitted on April 20, 2012, both parties informed the court. I realize this is a touchy subject here, but what's the joint appendix page? The joint appendix page is 1555, and in the government's brief, the government said that the latest collective bargaining agreement with the Air Traffic Controllers Union, the October 1, 2009 agreement, the FAA agreed to omit all prior practices pertaining to credit hours. All prior practices. What's your response to the argument that even if they said that, that some of your clients would have had to have known that they were still getting some credit, still using some of their credit hours? Sure. I have a three-fold argument in response to that. First of all, due to the court's earlier opinion, the credit hours are only in violation of the law if they were earned when someone had more than 24 credit hours on the book. The calculation of which credit hours were illegal and which weren't is extremely complicated. It's so complicated, the defendant can't do it itself. It relies on our expert to do that. So how would you expect an air traffic controller to know that the particular credit hour they're using is a credit hour that violated the law? Second of all, under 5 U.S.C. section 6130, flexible work schedules are supposed, where there's a union, are required to be negotiated with the union. And credit hours are not supposed to be used with respect to individuals who are in the bargaining unit without the union's approval. The 2009 agreement completely eliminated that. So one of the things we want to do discovery on is under what circumstances were these credit hours used since the union is no longer policing their use? Was it a nefarious situation where people were told, use the credit hours instead of your leave? How are they accruing credit hours, as Your Honor pointed out? There are experts' cursory review that showed that people were earning credit hours, accumulating them, as well as there's one individual, Scott Moore, Appendix 1995, who had 34 credit hours, which of course would exceed the 24 credit hour limit. So there's some sort of nefarious activities going on, potentially, that we would want to look into. The other point with respect to the employees knowing that they're using the credit hours, we need to know in what position they were in when they used the credit hours or when they accrued the credit hours. Were they in a properly FLSA-exempt position or not? These are all things that we didn't need to explore when the parties, because we didn't have, everyone had agreed that the credit hour program had ceased October 1st, 2009. There shouldn't be any doubt about that, based on the record, including Judge Hewitt, November 21st, 2011, instructed the parties to get ready for trial and had them do a number of things. In the parties' joint stipulation of facts, it's a joint stipulation of facts submitted on December 27th, the parties said, the FAA's data provided to plaintiff's expert, Dr. Lewis Lanier, and concludes information for each plaintiff for the time period for May 2nd, 2004, to October 1st, 2009, including records of balances such as compensatory and credit hours by pay period. Controller's expert, Dr. Lanier's calculations were based on data the government provided of credit hour usage and accumulation through October 1st, 2009. And at the trial, Mr. Staley testified, and Mr. Staley was the government's 30B6 witness on controller's pay. He's the expert for the government on the pay practices and policies, and he testified that the credit hour program had discontinued effective October 1st, 2009. And I already cited the post-trial brief by the government. So the prejudice that the plaintiffs will suffer here, if the case goes forward, is delay and needless expense, leading to years of discovery and another round of litigation. The needless expense is, of course, Dr. Lanier will have to redo calculations, but in addition, we're going to have to retake Rule 30B6 depositions on how on earth there was a credit hours program, in effect, where people were accruing and using credit hours after October 1st, 2009, when the union disavowed the program entirely. In addition, we'll have to have a trial on that. I'm sorry, is that an issue about lawfulness or what? Yeah, it's an issue under 5 U.S.C. Section 6130, that credit hours, flexible work schedules, have to be negotiated with the union. The record at the trial was that the credit hour program had ceased. That's undisputed. So what was going on that there were credit hours without a union agreement to do so? So suppose, say, one of your clients in November, December 2009, actually did use credit hours. What do you think the litigation would look like about whether that should or should not be subtracted from what would otherwise be owed? What I would need to explore in discovery, usually we'd look at what sort of memos, et cetera, went out about use of credit hours after October 1st, 2009. We didn't receive any discovery like that in the earlier litigation because everybody thought the program had ended. We would require discovery on the issue of what were the instructions from the FAA. How are they getting around a negotiation from the union? I guess what I'm just wondering about is this. Suppose your client did actually use the credit hour, then you would say can't subtract that because it turns out it was illegal? Well, we might say that. We'd also want to see the circumstances under which it was used. Did that comport with the free right to use the credit hours with FAA approval but that they weren't influenced or somehow required to use them contrary to law? For example, maybe they instructed them you can't use your leave until you use up all your credit hours. I don't know because we haven't explored that. But I would like to explore that very much because everyone in the case until December 2015 thought this program had ceased October 1st, 2009. So I would want to explore that. I'd also want to see if I should get liquidated damages for when they used the credit hours. There's a huge delay in payment. As I mentioned at the start of this argument, they've waited 9, 10, 11, 12, 13 years to use these under the recent Court of Claims Martin decision which follows the decisions in the Second Circuit and Rogers and follows the Biggs decision in the Ninth Circuit. Delayed payment requires liquidated damages. We didn't get that earlier so we will seek that for all of these credit hours used after October 1st, 2009 if they were in fact used. And, of course, depending on the circumstances under which they were used. If they were under circumstances that violated the law, then we would seek that they get no credit for that. And then, of course, we're going to have to go into a trial on liquidated damages again because it's likely the government will put up a defense on these issues and we'll have another trial as well. Now, the harm that the plaintiffs suffer is they've been awarded liquid damages on their existing damages and they don't get interest. So the delay only really assists one party in this case, which is the government. The case has been going on quite a while and so the delay will further benefit them. Is there any case law that recognizes that in a calculus say about this sounds like the question is government made a mistake. Should the mistake be excused? And the question of whether there's prejudice in now excusing the mistake plays a role in answering that question. Putting aside the kinds of issues that you've described about inquiries that would fairly have to be made about any post-September 2009 credit hours, just on the question of delay in a regime where there's no interest, is there authority saying that that can be recognized as an important piece of prejudice? I'm not familiar with that being recognized as an important piece of prejudice in these circumstances. I just think we can take notice that there are cases under the FLSA that say against the government you can't get interest in liquidated damages. There's a D.C. Circuit case, Social Security. You can't get either one or you can't get both? No, you can't get both. You can't get both. And that's SSA Baltimore versus FLRA 201F3465, a 2000 case. So the plaintiffs are stuck with a certain amount, and if the case goes on for several more years, then of course due to the time value of money, the value of that, their damages will erode. But also there's the problem, and one reason the case is when they go on this long, there's substantial prejudice that we suffer from the delay because we have a key witness, a union president who negotiated the credit hours program, who's passed away. And we also, of course, have faded memories, et cetera, when people are talking about credit hours and what the programs were nine years ago in the case. So the plaintiffs have suffered significant prejudice in terms of delay, and they will expend additional money that they shouldn't have had to expend. We could have explored this program back in 2010-11 if it was in fact going on, and it would have been a surprise to the union, I think, and we would have had all these issues before us at trial. And instead what we've got now is we'll have to retake depositions and try to unwind what has happened. Are there any further questions? Thank you, counsel. Thank you. Ms. Stern has some rebuttal time if you need it. Thank you, Your Honors. Well, I have to respectfully disagree with my colleague that it's undisputed that the entire credit hour program ceased because it was very clear that the credit hour usage continued. And certainly counsel may not have been aware of this, but appellees, the party, was aware of this. They were the ones that were using the credit hours. But your own brief does say all credit hour practices have ceased. Yes, but our testimony said we had testimony from a witness at Appendix 999-1000 testifying that appellees were entitled to continue using credit hours. The court's decision at Appendix 1631 said only that the provision of credit hours had ceased. We had later an affidavit attached to our motion for summary judgment. This was after the remand with the statement saying after 2009, appellees were allowed to continue using the credit hours. And, again, the appellees themselves were aware. This case reminds me of a situation where it's as if appellees went to the grocery store every week, bought a bunch of groceries, got a receipt for their groceries, and then at the end of the year when presented with the total amount that the groceries that they bought from the supermarket said, what a surprise. These parties, these appellees are the parties. They were the ones that were using it. And despite the fact that they knew that they were still using it and were, therefore, allowed to use the credit hours, no discovery was ever sought about that program of continued use. Did you all seek discovery of how many plaintiffs are here? They were over 8,000. Did you all seek discovery of their shoebox-kept receipts, as you would call them? No, we didn't. We didn't need the discovery. We had the access to the information. The appellees were aware that they had been using it, had the records that they had or didn't. But you didn't give up that information that you now concede you had. We didn't give it up in the aggregate form. All we did was put it in a convenient. We took information that was given to the appellees on a biweekly pay period basis. They have time and attendance cards. They have payroll. We made it in a very convenient form. But what about the fact that you proceeded on the basis that there was a firm end date for these calculations? That's what you told the trial court. These were complicated calculations that the trial court had to go through. And then you're saying, oh, by the way. Well, with respect to the time period up through 2012, we agreed only that the appellees' experts' calculations were based on records through 2009. That was the agreement. We didn't say there was no usage after 2009. That was a mistake. I take full responsibility. Credit hour usage continued from 2012 on through 2015. We could not have put those records in front of the court back in 2012. We did provide them to the appellees relatively soon after this court's final decision and remand, and the trial court took it back over. Again, this could not have come as a surprise to the appellees. They were the ones that were requesting permission each time they used their credit hours. They were on notice that the court's formula, the formula the court had adopted, was going to subtract the value of credit hours used from any overtime pay. That was the formula that they were on notice of. They knew that they were continuing to use credit hours and, therefore, getting the partial value. So to claim surprise suddenly and never seek discovery from the time that they were made aware of these supplementary reports, even though briefing on remand had just started. So the appellees had not even filed their motion for summary judgment on remand when we gave them a supplementation in 2014, and yet they just ignored it. They didn't object to it. They didn't seek discovery on it. They just ignored it. And we brought that to the court's attention. We said, look, we've updated this, and they're just not even addressing it, even though they know that's the formula and in the past have voluntarily included this information in their calculations. And, again, they didn't – they did not object. They did not seek discovery. They simply ignored it. Thank you, Ms. Stern. You can go to your red light. Thank you, Your Honor. Both parties have performed well in their unaccustomed roles. The court will take a brief recess and return in a few moments.